IN THE UNITED STATES COURT OF FEDERAL CLAIMS

BID PROTEST

| | | |
|---|---|---|
| M&A TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 07-16C |
| v. | ) | (Judge Baskir) |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| STEEL CLOUD, INC., | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |

DEFENDANT'S MOTION TO DISMISS

Pursuant to Rule 12(b)(1) and 12(b)(6) of the Rules of this Court ("RCFC"), defendant, the United States, respectfully requests that this Court dismiss the complaint filed by plaintiff, M&A Technologies, Inc. ("M&A"), because its challenges to the actions of the United States Postal Service ("Postal Service") have been rendered moot. Specifically, the Postal Service has taken voluntary corrective action to terminate the existing contract with the awardee and to conduct a reprocurement of the contract, thus mooting M&A's protest. In support of this motion, we rely upon the following brief.

## DEFENDANT'S BRIEF

## STATEMENT OF THE ISSUE

1. Whether M&A's complaint should be dismissed because it is moot.

## STATEMENT OF THE CASE

### I. Nature Of The Case

On January 12, 2007, M&A filed a post-award bid protest action in this Court seeking declaratory relief, preliminary and permanent injunctive relief, and bid and proposal costs. The contract was part of a best value procurement for the acquisition of 2545 computer servers. M&A alleged numerous errors with respect to the Postal Service's decision to award the contract to SteelCloud, Inc. ("SteelCloud"). See Compl.

M&A sought the following relief: (1) a declaration that the Postal Service's award was arbitrary, capricious, and otherwise not in accordance with law; (2) a preliminary injunction enjoining further performance of the contract; (3) a preliminary injunction enjoining the Postal Service from exercising any contract options; (4) a preliminary injunction enjoining any further performance under any options already exercised; (5) a permanent injunction prohibiting performance of the contract; (6) a permanent

injunction requiring the Postal Service to terminate the contract awarded; (7) a permanent injunction, applicable to any reprocurement that would require the Postal Service to conduct the procurement pursuant to regulation; (8) the award of bid and proposal costs; and (9) such other relief that the Court deems necessary. Compl. at pp. 20- 21.

After M&A filed its bid protest and before M&A filed its brief on the merits, the Postal Service reviewed its procurement decision and decided to initiate voluntary corrective action. Specifically, after reviewing its administrative record, the Postal Service has terminated its contract with SteelCloud and intends to reissue the solicitation and accept new offers, granting all of the relief that M&A seeks in its complaint.

## II. Statement Of Relevant Facts

On November 27, 2006, the Postal Service awarded the contract to SteelCloud. On December 11, 2006, the Postal Service debriefed M&A. Instead of seeking relief through the Postal Service's ombudsman procedure, 39 C.F.R. §§ 601.107, 601.108, M&A chose instead, to seek relief in this Court but waited 46 days from the date of award and 32 days from the date of its debriefing before filing its complaint. Before M&A filed its complaint, and in the absence of any request for a stay of performance,

SteelCloud began performance and delivered 26 servers. After M&A filed its complaint, even though it did not request a temporary restraining order, the Postal Service agreed to stay performance until the Court issued a decision in the protest.

After we filed the administrative record on January 25, 2007, M&A filed a motion to strike portions of the record. In response, during a telephonic status conference held on February 6, 2007, we notified the Court and the parties that the Postal Service intended voluntarily to reissue the solicitation and reevaluate the offers. Specifically, we informed the Court that the remedial action intended would include a small purchase on the contract and then a full re-procurement.[1] However, on February 7, 2007, the Postal Service determined that it was unnecessary to make that small purchase and, therefore, we notified the parties and the Court's clerk that the Postal Service intends to take corrective action. Specifically, the Postal Service, on February 8, 2007, terminated for convenience the contract with SteelCloud. See Att. A. Additionally, the Postal Service

[1] During the status conference held on February 6, 2007, the Court also granted M&A's motion to strike the Postal Service's Negotiation Memorandum and Technical Evaluation chart. (Tabs 9 and 10 of the record).

intends to unilaterally issue notices to all offerors on the contract describing the remedial action. See Att. B. In taking this voluntary remedial action, the Postal Service has not admitted or conceded the validity of any portion of M&A's complaint.

ARGUMENT

I. Standard Of Review

The Tucker Act supplies the Court's jurisdiction to entertain post-award bid protest actions. 28 U.S.C. § 1491(b)(1). The scope of review of procurement actions is "extremely limited." RADVA Corp. v. United States, 17 Cl. Ct. 812, 818 (1989), aff'd, 914 F.2d 271 (Fed. Cir. 1990) (table) (quoting CACI Field Serv., Inc. v. United States, 13 Cl. Ct. 718, 725 (1987), aff'd, 854 F.2d 464 (Fed. Cir. 1988) (table)); accord Prineville Sawmill Co., Inc. v. United States, 859 F.2d 905, 909 (Fed. Cir. 1988); NFK Eng'g, Inc. v. United States, 805 F.2d 372, 376 (Fed. Cir. 1986).

According to the plain language of the statute, this Court may award declaratory or injunctive relief to a party objecting to a "solicitation," a "proposed award" or "the award of a contract." 28 U.S.C. § 1491(b)(1) & (2). However, "federal courts do not sit to render advisory opinions." Fina Oil & Chemical Co. v. Ewen, 123 F.3d 1466, 1470 (Fed. Cir. 1997). As a

result, even where declaratory relief is sought, "an actual controversy between the parties" is required "before a federal court may exercise jurisdiction." Id. (explaining that declaratory relief is available "only when the situation has progressed to an actual controversy, as required by Article III of the Constitution").

In negotiated procurements, contracting officers "have broad discretion to take corrective action where the agency determines that such action is necessary to ensure fair and impartial competition." Mantech Telecommunications and Information Sys. Corp. v. United States, 49 Fed. Cl. 57, 65 (2001) (quoting DGS Contract Serv., Inc. v. United States, 43 Fed. Cl. 227, 238 (1999)). Both "this Court and the Comptroller General have indicated that they will not object to an agency's proposed corrective action provided it is 'reasonable under the circumstances,' DGS Contract Serv., Inc., 43 Fed. Cl. at 238, and 'appropriate to remedy the impropriety,' Rockville Mailing Serv., Inc., 96-1 CPD ¶ 184, at 3." Mantech, 49 Fed. Cl. at 65.

Further, this Court must assume that the Postal Service will carry out the remedial action in good faith. United Enterprise & Assoc. v. United States, 70 Fed. Cl. 1, 26 (2006). Indeed, as this Court has recognized, an

agency's decision to take remedial action "has the potential of benefitting [all] offerors and, thus, do[es] not constitute conduct that favors one offeror over another with all offerors, but rather seeks to 'enhance materially the proposal[s]' potential for award' and thereby, maximize[s] the Government's ability to obtain best value." Mantech, 49 Fed. Cl. at 77 (quoting 40 C.F.R. § 15.306(d)(2)(3)).

## II. M&A's Complaint Should Be Dismissed Because The Postal Service's Remedial Action Has Rendered This Protest Moot

### A. The Gravaman Of M&A's Complaint Is Now Moot

M&A's complaint seeks to enjoin the Postal Service and SteelCloud from further performance of the contract and any options that the Postal Service exercises. This is precisely the relief granted by the Postal Service's remedial action. Specifically, the Postal Service has terminated its contract with SteelCloud, thus explicitly satisfying M&A's request for relief number 6, and substantively satisfying all of M&A's requests for injunctive relief. Compl. at pp. 21-21, Request for Relief nos. 2-5. In other words, the Postal Service has done precisely the actions M&A has asked this Court to order the Postal Service to perform. The Postal Service has also stated its intention to reissue the solicitation and consider new offers, which it is presumed to do in good faith and in accordance with law, thus

satisfying M&A's request for relief number 7. Therefore, there is no longer a controversy between the parties on these issues. Accordingly, the requests should be dismissed as moot. See Deakins v. Monaghan, 484 U.S. 193, 201 n.5 (1988) (no jurisdiction if the case moot); CCL Service Corp. v. United States, 43 Fed. Cl. 680, 688 (1999) ("Federal Courts are permitted only to entertain matters in which there is a 'live' justiciable issue" and stating that, if there is no possibility of the alleged improper action from recurring, then the case is moot); see also Northrop Corp., Northrop Elcs. Sys Div. v. United States, 27 Fed. Cl. 795, 800 n.4 (1993) (discussion of mootness doctrine and its application by the Court of Federal Claims).[2]

Importantly, in undertaking the described voluntary remedial action, which moots M&A's complaint, the Government in no way admits or concedes the validity of any of the allegations, factual assertions, or alleged errors contained in M&A's various pleadings. This Court has recognized that remedial action proposed by the Government's does not amount to an admission of impropriety. See Mantech, 49 Fed. Cl. at 72 ("it

[2] This Court's decision in Mantech is not to the contrary. Unlike this case, in Mantech, the plaintiff sought to prevent the Government from instituting corrective action, see Mantech,49 Fed. Cl. at 65.

is important to recall that the government is not obliged to admit an error as a precondition to proposing corrective action"); CCL, 43 Fed. Cl. at 692; see also SMS Data Prods. Group, Inc., 99-1 CPD ¶ 26, at 3, 1999 WL 40943 (Comp.Gen.1999) ("It is not necessary for an agency to conclude that the protest is certain to be sustained before it may take corrective action; where the agency has reasonable concern that there were errors in the procurement, even if the protest could be denied, we view it as within the agency's discretion to take corrective action."); Federal Sec. Sys., Inc., B-281745.2, 99-1 CPD ¶ 86, at 4-5, 1999 WL 292729 (Comp.Gen.1999) (same). Therefore, the remedial action itself does not provide M&A with any remaining cause of action regarding this contract.

Finally, M&A's claim for bid proposal and preparation costs fails to state a claim upon which relief may be granted. Because the contract has been terminated and the Postal Service has instituted remedial action to re-procure the solicitation, there is no remaining foundation upon which M&A could base a claim for bid preparation costs. See Lion Raisins, Inc. v. United States, 69 Fed. Cl. 32, 36 (2005).

The Federal Circuit and the Court of Federal Claims have consistently held that a decision upon the merits must occur before bid

preparation and proposal costs can be awarded. See, e.g., PRC, Inc. v. Widnall, 64 F.3d 644, 647 (Fed. Cir. 1995) ("[A] prerequisite for an award of protest and proposal costs is a determination . . . that a challenged agency action is in violation of a statute or regulation . . . ") (internal citations omitted); CCL, 43 Fed. Cl. at 690 ("[A] decision on the merits of the award must be made prior to the award of bid preparation and proposal costs. Without analysis of the merits of the award, the court lacks a basis to grant further relieve."). The Postal Service's decision to terminate the contract and issue a new solicitation prevents M&A from seeking bid preparation and proposal costs. See S.K.J & Assoc., Inc. v. United States, 67 Fed. Cl. 218, 228 (2005) ("[B]ecause the original contract and solicitation at issue here were canceled, there is no matter before the court for resolution upon which [plaintiff] can base its claim for bid preparation and proposal costs."). Stated otherwise, M&A is not eligible for such bid preparation and proposal costs because it may be awarded the contract pursuant to the new solicitation. Therefore, M&A's request for bid preparation and proposal costs fails to state a claim upon which relief may be granted.

B. SteelCloud's Pre-Complaint Performance Does Not Provide M&A With Any Remaining Claims

To the extent that M&A wishes to maintain its action to litigate the propriety of the award of the first 26 servers, which have already been delivered, that claim has also been rendered moot. As we have demonstrated, there is no longer an existing contract, therefore, there is no remaining issue for the Court to determine. See S.K.J & Assoc., 67 Fed. Cl. at 228. As we have also demonstrated, all the relief sought in M&A's complaint has been remedied by the Postal Service's remedial action. Specifically, M&A has asked the Court to issue a declaration that the award to SteelCloud was arbitrary and capricious. The Postal Service has agreed to do all that it can do to provide the requested relief. As a result, since the Postal Service has taken every action that M&A has requested the Court to take by way of injunction, the only remaining request – for declaratory judgment – is merely academic. See LABAT-Anderson, Inc. v. United States, 65 Fed. Cl. 570, 575 (2005) (refusing bid protestor's request for declaratory judgment where it would have no practical effect and would result in a mere "academic exercise") (citations omitted).

To the extent that M&A contends it is entitled to additional relief, it is, in fact, merely requesting this Court to issue what amounts to an advisory

opinion upon a contract that no longer exists. "[A]s an Article III tribunal, [the Court of Federal Claims] has no constitutional authority to grant an advisory opinion. " Etowah Manufacturing Co., Inc. v. United States, 215 Ct. Cl. 1067 (1978) (citing United States v. Testan, 424 U.S. 392 (1976); United States v. King, 395 U.S. 1 (1969)). Stated otherwise, "[r]egardless of the scope of the court's discretion to entertain a claim for declaratory relief . . ., if there is no 'case or controversy,' the court has no jurisdiction over the subject matter of a claim." Tilley Lamp Co. v. A.W. Thacker, 454 F.2d 805, 808 (5th Cir. 1972); see also McCahill v. Borough of Fox Chapel, 438 F.2d 213, 215 (3rd Cir. 1971) ("Basically, the question in each [declaratory judgment] case is whether the facts alleged under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."). Here, the Postal Service has already provided M&A with all of the practical relief it sought in its complaint. There remains no “substantial controversy” upon which this Court may opine.

We do not dispute that this Court possesses limited jurisdiction in bid protest actions to award declaratory relief. See 28 U.S.C. § 1491(b).

However, the Court of Appeals for the Federal Circuit has reiterated that this Court's equitable powers in bid protests "should be exercised in a way [that] best limits judicial interference in contract procurement." Parcel 49C Ltd. P'Ship v. United States, 31 F.3d 1147, 1153 (Fed. Cir. 1994) (quoting United States v. John C. Grimier Co., 702 F.2d 1362, 1372 (Fed. Cir. 1983)). Here, M&A's every wish is satisfied by the Postal Service's remedial action. To permit M&A to continue litigating the merits of a now-moot contract award would interfere with the agency's "broad discretion to take corrective action where the agency determines that such action is necessary to ensure fair and impartial competition." Mantech, 49 Fed. Cl. at 65 (quoting DGS Contract, 43 Fed. Cl. at 238).

In any event, M&A's intentional delay in filing its complaint in this Court should not be rewarded simply so that M&A can obtain only an advisory opinion regarding the now-moot contract award. Indeed, it was M&A's own litigating decision to file its complaint after SteelCloud partially (and minimally) performed upon the contract. As we have demonstrated, at no time before it filed its protest did M&A take any available action to prevent SteelCloud from performing its contract. M&A did not avail itself of the Postal Service's ombudsman process, which could have very well

obviated the need to file a complaint in this Court. M&A also waited 46 days from the date of award and 32 days from the date of its debriefing to file its complaint in this Court and, once it did so, it did not even seek a temporary restraining order. In fact, the Postal Service voluntarily agreed to stay further performance until the Court issued its decision.

As a practical matter, M&A should not be permitted to benefit simply because it chose to file its complaint after it knew performance had already begun. Indeed, to permit M&A to do so would have a chilling effect upon agencies who recognize that remedial action is necessary, thus preventing them from acting in good faith and requiring them to continue to defend protests simply because they have no other viable option. As this Court has stated, "[w]hen the federal government perceives that an employee or organization has taken inappropriate action, it has a duty to institute immediate remedial action without further imposing on the citizenry." Brickwood Contractors, Inc. v. United States, 49 Fed.Cl. 738, 749 (2001) rev'd on other grounds, 288 F.3d 1371 (Fed. Cir. 2002).

## CONCLUSION

For these reasons, we respectfully request that this Court dismiss M&A's complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Acting Director

/s Bryant G. Snee
BRYANT G. SNEE
Assistant Director

OF COUNSEL:

MICHAEL KIELY
Law Department
United States Postal Service
Washington, D.C.

s/ Claudia Burke
CLAUDIA BURKE
Trial Attorney
Department of Justice
Civil Division
Commercial Litigation Branch
1100 L St., N.W.
ATTN: Classification Unit
8th Floor
Washington, D.C. 20530
Telephone: (202) 353-9063
Facsimile: (202) 514-7965

February 8, 2007

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on February 8, 2007, a copy of the foregoing "DEFENDANT'S MOTION TO DISMISS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Claudia Burke

Claudia Burke