**REDACTED COPY**

## CERTIFICATE OF FILING

I hereby certify that on this 9th day of February 2007, a copy of the foregoing " PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD " was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ David P. Hendel
David P. Hendel

**REDACTED COPY**

public interest, as reflected in this new law, thus supports issuance of declaratory relief and entitlement to bid and proposal costs.

## CONCLUSION

The protest should be granted and the court should issue declaratory relief and grant M&A's request for entitlement to bid and proposal costs.

Respectfully submitted,

s/ David P. Hendel

David P. Hendel
**Akerman Senterfitt Wickwire Gavin, P.C.**
8100 Boone Blvd., Ste. 700
Vienna, Virginia 22182
(703) 790-8750
(703) 448-1767 (Fax)

*Attorney of Record for M&A Technology, Inc.*

Of Counsel:
J. Michael Littlejohn
Claude P. Goddard
Pavan Khoobchandani
**Akerman Senterfitt Wickwire Gavin, P.C.**
8100 Boone Blvd., Ste. 700
Vienna, Virginia 22182
(703) 790-8750
(703) 448-1767 (Fax)

**REDACTED COPY**

as Public Law 109-435, December 20, 2006. Concerned that the Postal Service had not treated its suppliers fairly, Section 1004 of HR 6407 provides:

> It is the sense of Congress that the Postal Service should –
>
> (1) ensure the fair and consistent treatment of suppliers and contractors in its current purchasing policies and any revision or replacement of such policies, such as through the use of competitive contract award procedures, effective dispute resolution mechanisms, and socioeconomic programs; and
>
> (2) implement commercial best practices in Postal Service purchasing policies to achieve greater efficiency and cost savings by taking full advantage of private-sector partnerships as recommended in July 2003 by the President's Commission on the United States Postal Service.

Pub. L. No. 109-435 § 1004. The Postal Service's procurement action here violated this statutory provision. By misevaluating M&A's proposal, acting contrary to the Solicitation's stated evaluation method, and violating its own *Supplying Principles and Practices* purchasing policy manual, the Postal Service has violated the "fair and consistent treatment of suppliers" standard. And by ignoring the [redacted] that would be achieved under M&A's proposal, the Postal Service violated the "achieve greater efficiency and costs savings" standard in the second prong. The

**REDACTED COPY**

(EAJA). See CSE Construction v. United States, 58 Fed. Cl. at 263. Under the holding in Buckhannon v. West Virginia Department of Health and Human Resources, et al., 532 U.S. 598; 121 S. Ct. 1835; 149 L. Ed. 2d 855 (2001), a party may recover EAJA fees only if its legal action resulted in obtaining a judgment or some other decree which changes the legal relationship of the parties. If M&A obtains a declaratory judgment, it may be eligible to recover attorney fees and costs under EAJA. If a declaratory judgment is not issued, M&A will suffer irreparable harm because it may be unable to recover EAJA fees.

To allow the Postal Service to escape a declaratory judgment would also do great harm to the integrity of the public procurement system. When a procurement decision is challenged in court, and the judicial process is invoked, the public is entitled to know whether a public agency acted properly. Accountability of our public agencies would be harmed by allowing agencies to escape a judicial determination of whether challenged procurement actions were properly conducted. Moreover, when the judicial process is invoked, the wrong-doer may not escape a declaration of its wrong-doing simply because it pledges to do wrong no more.

Just two months ago, Congress passed and the President signed into law H.R. 6407, the "Postal Accountability and Enhancement Act," enacted

corrective action or the court grants injunctive relief that makes the original proposal efforts a "needless expense," then the protestor should be entitled to bid and proposal costs to compensate for those wasted efforts. See generally Beta Analytics International, Inc. v. United States, 2007 U.S. Claims LEXIS 21, at *9 (Fed. Cl. Jan. 31, 2007) (where the court, citing Heyer Products Co. v. United States, 135 Ct. Cl. 63, 71 (1956), discussed that a pure reevaluation of proposals would eliminate the need for bid and proposal costs but other solutions may provide a basis for monetary remedy).

The Postal Service intends to issue a new solicitation and seek new proposals from offerors. Even if M&A may be able to re-use some portions of its prior proposal in responding to the new solicitation – something that is not yet known as the new solicitation has not been issued – it will still have incurred needless expense in having to prepare two separate proposals over two different time periods. Thus, M&A's entitlement to bid and proposal costs is not extinguished by USPS's determination to issue a new solicitation and re-procure.

Finally, M&A would be irreparably harmed if a declaratory judgment is not issued because it would then be unable to seek recovery of attorney fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412

REDACTED COPY

In addition, M&A will be irreparably harmed if a declaratory judgment is not issued because it will then be deprived of an opportunity to recover its bid and proposal costs. Pursuant to the ADRA, the Court of Federal Claims may award bid and proposal costs to a protester in a post award bid protest lawsuit. 28 U.S.C. § 1491(b)(2). The Court grants such costs where the agency's decision was arbitrary or capricious or in violation of statute. See Dynacs Engineering Co., Inc. v. United States, 48 Fed. Cl. 614 (2001); Gentex Corp. v. United States, 58 Fed. Cl. 634 (2003).

Bid and proposal costs may be in addition to or in lieu of injunctive relief. 28 USC 1491(b)(2) ("To afford relief in such an action, the court may award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs."). In most cases, the court finds that bid and proposal costs are proper after declaring that the agency action was arbitrary or capricious but finding that an injunction is not proper. See, e.g., CSE Constructors Co., Inc. v. United States, 58 Fed. Cl. 230, 263 (2003) (sustaining protest by finding that the agency acted improperly and granting bid and proposal costs where injunction was not merited).

The Postal Service's recent corrective action does not eliminate M&A's entitlement to obtain bid and proposal costs. If an agency takes

**REDACTED COPY**

They will not be repeated here, but are incorporated by reference as additional grounds for relief.

### B. Declaratory Relief and Entitlement to Bid and Proposal Costs Should Now Issue.

The Postal Service' s unilateral determination of corrective action – terminating the SteelCloud contract and recompeting the procurement – is welcomed, but it does not eliminate the need for further relief. The Postal Service took this corrective action only after M&A was compelled to bring this legal action. The Postal Service had before it a draft of the Complaint a full *three weeks* before M&A brought this proceeding. If the Postal Service did not want its actions to be judged by a court, it had plenty of time to take corrective action. That opportunity is now gone, as the legal process has commenced and a case and controversy still exists.

If a declaratory judgment is not issued, M&A faces substantial reputational harm within the industry and within the Postal Service, which continues to maintain it acted properly. The Postal Service did not act properly, and it should not be allowed to avoid a declaration of this determination after M&A was compelled to seek adjudicatory relief from this Court.

**REDACTED COPY**

M&A sought to avoid the necessity of this litigation by providing a draft of the complaint to the Postal Service on December 22, 2006. (Elwany Decl., ¶ 27.) It appears that the Postal Service used the draft Complaint as a roadmap to create post-hoc rationalizations for the decision it had already made. If this is indeed what occurred, such action is deplorable. Regardless of how the December 29, 2006 Award Recommendation came to be – a mystery that may never be solved – the failure of the Administrative Record to explain how proposals were evaluated and the award decision was made requires that the award be declared arbitrary, capricious, and in violation of law.

### 2. USPS Acted Arbitrarily, Capriciously, and in Violation of Law in Evaluating Proposals and Making Its Award Decision.

Since the Postal Service failed to contemporaneously describe how it evaluated proposals and made its award decision, it cannot be determined from the Administrative Record how it actually conducted the procurement. From the post-hoc statements made at the debriefing, and from the post-hoc debriefing presentation materials, M&A determined that USPS had acted arbitrarily and capriciously in many different respects. These allegations are described in M&A's January 12, 2006 Complaint and Memorandum in Support of Its Application for a Preliminary Injunction.

REDACTED COPY

(Slip op. at 18.) The contract award was vacated and the case remanded for an award determination that included a documented analysis.

Similarly here, there are no contemporaneous documents describing how proposals were evaluated and the award decision made. Since there is no contemporaneous documentation setting out the agency's evaluation of proposals and award decision in the Administrative Record, the award should be vacated and the case remanded, as it was in 210 Earll.

Such action is even more compelling in this case, because the post-hoc Award Recommendation (formerly at AR Tab 10, pp. 248-255) was dated five weeks after the contract was awarded, two and one-half weeks after M&A's debriefing, and one week after M&A provided the Postal Service with a draft of the Complaint it later filed in this action. It is quite troubling that the Award Recommendation, which is dated one week after M&A provided USPS its draft Complaint, is at odds with what M&A was told at its debriefing. (AR Tab 10, pp. 448-454.) For example, the [redacted] described at M&A's debriefing (AR 452) is completely absent from the later prepared, post-hoc and post-debriefing Award Recommendation. Unlike 210 Earll, however, the agency has not even attempted to explain why these documents – both of which are post-hoc creations – are so different.

**REDACTED COPY**

### 1. The Administrative Record Does Not Explain How Proposals Were Evaluated or the Selection Decision Was Made.

The Administrative Record contains no document that explains how the Postal Service evaluated proposals or made its selection decision. In this Court's January 17, 2007 scheduling Order, the Court specifically called the parties' attention to the recent decision in 210 Earll, L.L.C. v. United States, 06-360C (November 21, 2006). In that case, the Administrative Record did not contain any contemporary evaluation or analysis of the non-price award factors. The agency sought to fill in the gap with what it called a "declaration" by the contracting officer. Because the document was in fact created after award, the Court found that the analysis therein "could hardly be described as objective." (Slip op. at 17.)

Recognizing that the "declaration" was created after award, agency counsel sought to admit it anyway as a matter of expediency. The Court rejected this argument:

> The APA requires a reasoned analysis at the time of the decision. It does not require a reasoned analysis only when the Contracting Officer's decision is challenged in court. [Citations and parentheticals deleted.] To accept the Contracting Officer's *post hoc* explanation as sufficient to cure his earlier error would set a most disruptive precedent.

REDACTED COPY

### A. M&A's Protest Should be Granted.

M&A's protest is meritorious and should be granted. M&A filed this protest after its debriefing, at which it learned that the Postal Service had failed to evaluate price, ignored price differences, ignored M&A's primary proposal, irrationally evaluated proposals, relied on incorrect facts and irrational conclusions, and inexcusably misunderstood M&A's proposal. After the Administrative Record was provided, these arbitrary and capricious actions took a back seat to an even larger issue: there was no contemporaneous documentation describing how proposals were reviewed, evaluated, scored, ranked, compared, and selected for award.

The court may enter a declaratory judgment upon finding that an agency acted arbitrary, capriciously or not in accordance with applicable law. See, e.g., ECDC Environmental, L.C. v. United States, 40 Fed. Cl. 236, 246 (1998) (directing the clerk to enter judgment in protestor's favor declaring plaintiff's bid as responsive based on finding that agency acted unreasonably). Because the Administrative Record does not explain how proposals were evaluated and the award selection made, the award decision was arbitrary, capricious, and not in accordance with applicable law, and such declaratory judgment should issue.

**REDACTED COPY**

already in existence, not some new record made initially in the reviewing court." Comprehensive Health Servs. v. United States, 70 Fed. Cl. 700, 719 (2006); see also Advanced Sys. Dev. v. United States, 72 Fed. Cl. 25, 33 (2006). As such, "parties are limited to the agency record for their proof of facts in support of their motion" and "the Court is similarly restricted." Cygnus Corp., 72 Fed. Cl. at 384. In its review of the administrative record, the Court must make factual findings, "much as if [it] were trying the case on a paper record." Cygnus Corp. v. United States, 72 Fed. Cl. 380, 384 (Ct. Cl. 2006); see also Bannum, Inc. v. United States, 404 F.3d 1346, 1356-57 (Fed. Cir. 2005). A "litigation-motivated contrivance by a contracting officer does not deserve any deference from this court." Systems Plus, 69 Fed. Cl. at 768.

## IV. M&A IS ENTITLED TO DECLARATORY AND OTHER RELIEF.

M&A's protest should be granted, and the following declaratory and injunctive relief ordered: (1) a declaratory judgment that the award was arbitrary and capricious; and (2) a finding that M&A is entitled to recover its bid and proposal costs.

**REDACTED COPY**

discretion, or otherwise not in accordance with the law. Id.; 5 U.S.C. § 706(2)(A.) To prevail, a protestor must show that the agency's actions were either without a rational basis or in violation of an applicable regulation or procedure that occurred during the procurement process. E.g., Hospital Klean, 65 Fed. Cl. at 621; Aeroplate Corp., 67 Fed. Cl. at 8; see also Asia Pac. Airlines, 68 Fed. Cl. at 19-20 (applying the APA standard of review to Postal Service protests); Banknote Corp. of Am., 365 F.3d at 1351 (same), quoting Keeton Corr., Inc., v. United States, 59 Fed. Cl. 753, 755 (2004). The agency has the burden of providing a "coherent and reasonable explanation of its exercise of discretion" and the protestor has the "'heavy burden' of showing that the award decision had 'no rational basis.'" Impresa Construzioni, 238 F.3d at 1333. An agency decision is without a rational basis when "the agency 'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" Asia Pac. Airlines, 68 Fed. Cl. at 19.

In accordance with its application of the Administrative Procedure Act's "arbitrary and capricious" standard, the Court of Federal Claims' review of a bid protest is necessarily limited to "the administrative record

**REDACTED COPY**

182 to AR 170.) M&A was an incumbent supplier to the Postal Service on similar programs that was chosen by the Postal Service to respond to the RFP. See, e.g., Systems Plus, Inc. v. United States, 69 Fed. Cl. at 769 (protestor was prejudiced by agency action when it submitted lowest bid, was the incumbent, and proposal was within "zone of consideration"). Accordingly, M&A would have had a substantial chance to receive the contract award and was prejudiced by the Postal Service's arbitrary evaluation. N.C. Div. of Serv. for the Blind v. United States, 53 Fed. Cl. 147, 162 (2002.). The loss of the contract adversely impacts M&A's ability to cover its fixed costs and to improve its potential for profitability. See Asia Pac. Airlines, 68 Fed. Cl. at 26. For all of these reasons, M&A has standing to challenge the award to SteelCloud.

## III. STANDARD OF REVIEW

The ADRA specifically made applicable the standards of review set forth in the Administrative Procedures Act (“APA”) for the Court’s review of an agency’s decisions in bid protest actions. See, e.g., Aeroplate Corp. v. United States, 67 Fed. Cl. 4, 8 (2005); Hospital Klean, 65 Fed. Cl. at 620-21. Under the APA standard of review, the Court has the discretion to overturn agency actions that are arbitrary, capricious, an abuse of

**REDACTED COPY**

States, 66 Fed. Cl. 776, 782-83 (2005); see also Banknote Corp. of Am. 365 F.3d at 1351 (applying same test to Postal Service protest.)

A protestor must also show that it was prejudiced by the agency's actions during the procurement process. Information Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1319 (Fed. Cir. 2003); Asia Pac. Airlines, 68 Fed. Cl. at 20. To establish prejudice, a protestor must show that is had a substantial chance of obtaining the award but for the alleged error. Galen Medical Associates, Inc. v. United States, 369 F.3d 1324, 1331 (Fed. Cir. 2004). See also Conscoop - Consorzia Fra Cooperative Di Prod. E Lavorof, v. United States, 62 Fed. Cl. 219, 228 (2004), (quoting Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed. Cir. 1996) ("had it not been for the alleged error in the procurement process, there was a reasonable likelihood that the protester would have been awarded the contract.".) The protestor's chance of receiving award "must not have been insubstantial." Information Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1319 (Fed. Cir. 2003).

As set forth below, but for the Postal Service's unlawful actions, M&A likely would have been the awardee. M&A was the [redacted] offeror by more than [redacted] lower than the awardee's price (considering all option quantities). (Compare AR

**REDACTED COPY**

contract or an alleged violation of statute or regulation in connection with a procurement. 28 U.S.C. § 1491(b)(1); Hospital Klean of Texas, Inc. v. United States, 65 Fed. Cl. 618, 620-21 (2005); ATA Def. Indust., Inc. v. United States, 38 Fed. Cl. 489, 494 (1997); Banknote Corp. of Am., 365 F.3d at 1351. In this case, there is no record that the Postal Service evaluated proposals or made its award decision as described in the Solicitation.

**B. M&A Has Standing.**

To establish standing, the protester must show that it is an interested party that has been prejudiced by an error in the agency's action. Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed. Cir. 1996). Systems Plus, Inc. v. United States, 69 Fed. Cl. 757, 764 (2006). To be considered an interested party, a protestor must show that it was "an actual or prospective bidder" and that it has a "direct economic interest in the procurement." Comprehensive Health Services, Inc. v. United States, 70 Fed. Cl. 700, 715 (2006). M&A is an interested party as it was an actual offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract and, therefore, has standing to challenge the award to SteelCloud. Four Points by Sheraton v. United

makes no mention whatsoever of this process. (Former AR Tab 10, pp. 248-255.) M&A did not know, and USPS did not disclose, that there was no contemporaneous documentation describing how proposals had been evaluated or the selection decision made. After waiting three weeks for USPS to voluntarily take corrective action, on January 12, 2006, M&A filed this action.

## II. JURISDICTION AND STANDING

### A. The Court Has Jurisdiction.

The Court has jurisdiction over this post-award bid protest action pursuant to 28 U.S.C. § 1491(b), enacted as part of the Administrative Disputes Resolution Act of 1996 ("ADRA"), 28 U.S.C. § 1491(b.) The Federal Circuit has confirmed that this jurisdiction extends to protests involving the Postal Service. See, e.g., Emery Worldwide Airlines, Inc. v. United States, 264 F.3d 1071, 1086 (Fed. Cir. 2001); Banknote Corporation of America v. United States, 365 F.3d 1345, 1351 (Fed. Cir. 2004.) See also Asia Pacific Airlines v. United States, 68 Fed. Cl. 8, 17-18 (2005) (finding jurisdiction to hear protests over Postal Service procurements). ADRA provides the Court with jurisdiction to render judgment on an action by an "interested party" objecting, among other things, to the award of a

**REDACTED COPY**

and five M&A representatives. (AR Tab 19, p. 448; Elwany Decl. at ¶ 16.) There is nothing in the Administrative Record that supports the statements made by these postal representatives in the debriefing and in the written debriefing presentation concerning the evaluation of proposals and award decision. During the debriefing, the contracting officer stated that M&A's proposal was the second ranked proposal, meaning that it was next in line for award. (Elwany Decl. at ¶ 26.) The program manager separately stated that she recommended award be made to another offeror, but did not identify which one. (Elwany Decl. at ¶ 26.)

The debriefing caused M&A to believe that its proposal had been improperly evaluated and the procurement conducted improperly. In hopes of resolving the matter without resort to litigation, on December 22, 2006, M&A provided the Postal Service with a draft of the Complaint it would later be compelled to file in this action. (Elwany Decl., ¶ 27.) Instead, on December 29, 2006, the Postal Service created its post-hoc Award Recommendation. (See former AR Tab 10.) This post-hoc Award Recommendation described a different evaluation process than what had been described in the M&A debriefing. For example, the debriefing materials portrayed an evaluation process that used [redacted] (AR Tab 19, p 451.) The post-hoc Award Recommendation

**REDACTED COPY**

## C. USPS Award to Steelcloud

By letter dated November 21, 2006, USPS notified SteelCloud that it had been selected for award and was authorized to proceed with the initial quantity of 26 units. (AR 270.)

By letter dated November 27, 2006, the USPS advised M&A that it had awarded the AFSM100 contract to SteelCloud, Inc. (AR Tab 13, p. 273.) The Notice of Award stated that the potential contract value was $9,618,070 – [redacted].[2] (Elwany Decl. at ¶ 15.)

The Administrative Record contains no contemporaneous documentation of any kind describing whether, or how, the Postal Service evaluated and ranked proposals, performed a comparative analysis, or performed a cost-technical trade-off analysis. The Administrative Record contains no contemporaneous documentation of any kind describing how the Postal Service determined to select SteelCloud for award.

## D. USPS Debriefs M&A

A debriefing was held on December 11, 2006, attended by USPS Contracting Officer Mark Travers and Program Manager Brenda Weeks,

[2] Bracketed material indicates protected material that is proposed to be taken out of the redacted version of this filing.

**REDACTED COPY**

USPS would purchase 25 pre-production units upon award. Another 2,515 units could be purchased under various options set out in the Solicitation. (AR Tab 2, pp. 6-7; AR Tab 3, p. 29.) The purpose of the acquisition was to provide computer servers to another postal contractor, Siemens, which was to incorporate the servers into its AFSM100 mail processing equipment. (AR Tab 2, p. 6.) The Solicitation stated that the Postal Service would make a best value award on the basis of "price and other factors." (AR Tab 2, p. 12, Provision 4-2(a) emphasis added.)

### B. M&A Submits Proposal and Alternate Proposal

On October 26, 2006, M&A submitted a timely proposal that offered to provide the specified AFSM100 computer servers as described in the Solicitation's specifications, as well as an alternative proposal. (AR Tab 7, p. 175; Elwany Decl.[1] at ¶ 11.)

---

[1] The Elwany Declaration was filed on January 12, 2007 along with M&A's Complaint and other initial protest papers.

**REDACTED COPY**

Defendant yesterday terminated the SteelCloud contract and filed a motion to dismiss, contending that "the Postal Service has taken every action that M&A has requested." M&A will, pursuant to the Court's rules, reply separately to this motion. Suffice to say here, the Postal Service's action does not afford M&A the complete relief it has sought or to which it is entitled. The Postal Service still denies that it acted arbitrarily or capriciously, and thus objects to M&A's requested declaratory relief. The Postal Service also denies that M&A is entitled to recover bid and proposal costs. Thus, a case and controversy still exists, and the case should proceed to final adjudication on the merits. The protest should be sustained and the remaining M&A prayers for relief (which USPS continues to contest) should be granted.

## I. FACTUAL BACKGROUND

### A. Solicitation Provisions

On October 19, 2006, the Postal Service issued Solicitation No. 3AAREC-07-A-001 ("Solicitation") for computers for the Flats Recognition Improvement Program. (Administrative Record (AR) Tab 2, page 6 (all page number references are to AR page numbers, not individual document page numbers).) The Solicitation stated that

**REDACTED COPY**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

[redacted]

| | | |
|---|---|---|
| **M&A TECHNOLOGY, INC.** | ) | |
| | ) | **BID PROTEST** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 07-16C** |
| | ) | **(Judge Baskir)** |
| **UNITED STATES,** | ) | |
| | ) | [redacted] |
| **Defendant.** | ) | |
| ______________________________ | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

M&A Technology seeks judgment on the Administrative Record for the reasons previously described in its January 12, 2007 "Memorandum in Support of Its Application for Preliminary Injunction." With the Court's striking of Administrative Record Tabs 8 and 10, which were non-contemporaneous documents, there is no explanation as to how the Postal Service selected SteelCloud over any other offeror. Therefore, the protest should be granted, declaratory judgment should be issued, and entitlement to bid and proposal costs awarded to M&A Technology.

**REDACTED COPY**

## STATUTES AND REGULATIONS

Administrative Disputes Resolution Act of 1996, 28 U.S.C. § 1491(b) .......... 6, 14, 16, 17

Equal Access to Justice Act, 28 U.S.C. § 2412 .......... 18, 19

Postal Accountability and Enhancement Act, Pub. Law No. 190-435 § 1004 .......... 19, 20

U.S. Postal Service *Supplying Principles and Practices* .......... 20

**REDACTED COPY**

*Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1562 (Fed. Cir. 1996) ......... 7, 8

*Dynacs Engineering Co., Inc. v. United States*, 48 Fed. Cl. 614 (2001) .... 17

*ECDC Environmental, L.C. v. United States*, 40 Fed. Cl. 236, 246 (1998) ........................................................................................ 12

*Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1086 (Fed. Cir. 2001)........................................................................................ 6

*Four Points by Sheraton v. United States*, 66 Fed. Cl. 776, 782-83 (2005) ........................................................................................ 7, 8

*Galen Medical Associates, Inc. v. United States*, 369 F.3d 1324, 1331 (Fed. Cir. 2004)........................................................................................ 8

*Gentex Corp. v. United States*, 58 Fed. Cl. 634, 652 (2003) ...................... 17

*Heyer Products Co. v. United States*, 135 Ct. Cl. 63, 71 (1956)................ 18

*Hospital Klean of Texas, Inc. v. United States*, 65 Fed. Cl. 618, 620-21 (2005) ........................................................................................ 7, 9, 10

*Impresa Construzioni v. United States*, 238 F.3d 1324, 1333 (Fed. Cir. 2001)........................................................................................ 10

*Information Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003)........................................................................................ 7, 8

*Keeton Corr., Inc., v. United States*, 59 Fed. Cl. 753, 755 (2004).............. 10

*North Carolina Div. of Serv. for the Blind v. United States*, 53 Fed. Cl. 147, 162 (2002) ........................................................................................ 9

*Systems Plus, Inc. v. United States*, 69 Fed. Cl. 757, 764 (2004) ........................................................................................ 7, 9, 11

**REDACTED COPY**

## TABLE OF AUTHORITIES

### CASES

*210 Earll, L.L.C. v. United States*, 06-360C (November 21, 2006) ...... 13, 14

*Advanced Sys. Dev. v. United States*, 72 Fed. Cl. 25, 33 (2006) .............. 11

*Aeroplate Corp. v. United States*, 67 Fed. Cl. 4, 8 (2005) ...................... 9, 10

*Asia Pacific Airlines v. United States*, 68 Fed. Cl. 8, 17-18 (2005) ........................................................................ 6, 7, 9, 10

*ATA Defense Industries, Inc. v. United States*, 38 Fed. Cl. 489, 494 (1997) .............................................................................................. 7

*Banknote Corporation of America v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004) ..................................................... 6, 7, 8 10

*Bannum, Inc. v. United States*, 404 F.3d 1346, 1356-57 (Fed. Cir. 2005) ............................................................................................ 11

*Beta Analytics International, Inc. v. United States*, 2007 U.S. Claims LEXIS 21, at *9 (Jan. 31, 2007).................................................... 18

*Buckhannon v. West Virginia Department of Health and Human Resources, et al.*, 532 U.S. 498 121 s. Ct. 1835; 149 L. Ed. 2d 855 (2001) .......................................................................................... 19

*Comprehensive Health Services, Inc. v. United States*, 70 Fed. Cl. 700, 715 (2006) ....................................................................... 7, 11

*Conscoop - Consorzia Fra Cooperative Di Prod. E Lavorof, v. United States*, 62 Fed. Cl. 219, 228 (2004) ............................................. 8

*CSE Constructors Co., Inc. v. United States*, 58 Fed. Cl. 230, 263 (2003) ................................................................................ 17, 19

*Cygnus Corp. v. United States*, 72 Fed. Cl. 380,384 (2006)................ 10, 11

REDACTED COPY

## TABLE OF CONTENTS


I. FACTUAL BACKGROUND .......... 2

A. Solicitation Provisions .......... 2

B. M&A Submits Proposal and Alternate Proposal .......... 3

C. USPS Award to Steelcloud .......... 4

D. USPS Debriefs M&A .......... 4

II. JURISDICTION AND STANDING .......... 6

A. The Court Has Jurisdiction .......... 6

B. M&A Has Standing .......... 7

III. STANDARD OF REVIEW .......... 9

IV. M&A IS ENTITLED TO DECLARATORY AND OTHER RELIEF .......... 11

A. M&A's Protest Should Be Granted .......... 12

1. The Administrative Record Does Not Explain How Proposals Were Evaluated or the Selection Decision Was Made .......... 13

2. USPS Acted Arbitrarily, Capriciously, and in Violation of Law in Evaluating Proposals and Making its Award Decision .......... 15

B. Declaratory Relief and Entitlement to Bid and Proposal Costs Should Now Issue .......... 16

CONCLUSION .......... 21

**REDACTED COPY**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

[redacted]

| | | |
|---|---|---|
| **M&A TECHNOLOGY, INC.** | ) | |
| | ) | **BID PROTEST** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 07-16C** |
| | ) | **(Judge Baskir)** |
| **UNITED STATES,** | ) | |
| | ) | [redacted] |
| **Defendant.** | ) | |
| ______________________________ | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

David P. Hendel
**Akerman Senterfitt Wickwire Gavin, P.C.**
8100 Boone Blvd., Ste. 700
Vienna, Virginia 22182
(703) 790-8750
(703) 448-1767 (Fax)
*Attorney of Record for M&A Technology, Inc.*

Of Counsel:
J. Michael Littlejohn
Claude P. Goddard
Pavan Khoobchandani
**Akerman Senterfitt Wickwire Gavin, P.C.**
8100 Boone Blvd., Ste. 700
Vienna, Virginia 22182
(703) 790-8750
(703) 448-1767 (Fax)